Good morning. Deborah Snyder on behalf of the Commissioner for Internal Revenue. May I reserve two minutes for rebuttal? Yes, certainly. Please try to keep track of your own time, though. Okay. Thank you. In this case, the Court in Mr. Dunkin's divorce proceedings ordered him to make monthly payments to his former wife under the Connecticut's – sorry, California Supreme Court case of Under Gilmour, of course, because Mr. Dunkin chose to delay retirement, his former wife could elect to receive immediate payments from him for the resulting impairment in her community property interest and the retirement benefits. The tax court in this case held that Mr. Dunkin could reduce his gross income by the amount of those payments for his 2000 tax year. Now, that year was a year during which Mr. Dunkin had not retired, and as a result, no distributions were made from the pension plan. So the tax court's decision in this case was erroneous. Let me just ask you a question. Yes. If California decided that post-divorce wages were community property, wouldn't it follow under the Poe case that he would not be taxable on the one-half owned by the ex-spouse? Well, I don't know that California could decide that post-divorce wages were community property, but if they did, I suppose that could follow, because if it's a property settlement and if a former spouse is just receiving something that was hers in the first place, then the spouse who owns it would pay – would be responsible for the tax burden on that property. So, for example, if there had been a pension distribution of community property to the spouses, each spouse would be responsible for the tax burden on what they owned, on their community property. But in reality, there's not a real difference here, is there? There was not a distribution, but it was as a result of the original community. And do you think we should certify this to make any difference if we did? I don't think that's necessary, because I think the California law is clear that there is a real difference between community property and separate property. So there's a difference between whether a spouse receives community property or whether she is simply paid off for her community property interest. And I think the California court in Gilmore analogized this situation to a case where one spouse would be buying out the other spouse's interest in a property in a house. And that's a situation this Court has addressed in the Boucher case, which was a case decided by this Court in 1983, which is cited in the government's brief, I believe, on page 24. In that case, what happened was very similar. The husband was ordered to make monthly payments to the former wife for her interest in a ranch. So it's the same sort of thing where each spouse had an ownership interest in the ranch. He was ordered to make the payments to her in order to basically compensate her for her interest. And this Court held that the husband could not deduct those payments because they were compensation for the former wife's interest in property. So there's a real difference between somebody receiving community property that she, in fact, owns and somebody who is receiving payments as compensation for that property. Here, there's no question that the wages that Mr. Duncan used to make those payments were his separate property. So yes. I was just going to say that, I mean, there's no basis to convert Mr. Duncan's separate property into community property, which is essentially what the tax court did. The tax court basically engaged in a fiction. It treated Mr. Duncan as if he had received a distribution of community property from the pension, and that of that community property, half of it was his wife's and forwarded over to her. But that's absolutely not what happened. You can't have a distributee of a pension without having a distribution from a pension plan. Assuming that's correct, if, in following up on Judge Nelson's question, if the California Supreme Court were to say, we treat the spouse's, the employee's spouse's wages after a Gilmore election as community property, such that in this case, for example, let's say he made $5,000 in wages. He got $4,000, which we, the California Supreme Court, are going to say are community property, so that $2,000 of it goes to her and $2,000 of it stays, in effect, with him. The tax consequences to him don't much matter because he's got to pay taxes on all of it anyway. Where is the line drawn between how far the California Supreme Court can go in characterizing what that property is and where the Federal interest in treatment for Federal income tax purposes begins? Well, State law determines ownership. So, for example, California has decided that income earned or assets acquired during the marriage are community property owned half by each. So, for example, State law says that each spouse owns half of the pension that was earned during marriage. But it's Federal law that determines the tax consequences. Generally, the tax consequences follow ownership. So, I mean, it's the State law that determines what the tax consequences are. I get that general proposition, but I'm tax-challenged. So I don't quite know where the one stops and the other begins. And that's the reason I was focusing really on Judge Nelson's question, because if the California Supreme Court were to indulge the fiction that the tax court did and say, look, so far as we're concerned, post-divorce wages following a Gilmore election are community property. And so the spouse has 50 percent interest to the tune of her interest in the pension. Would the Feds follow that, or would the Feds say, wait a minute, that's a — it's up to us to determine the tax consequences, and you can't really dictate that? Well, I don't know, because that would create a clear conflict, because the tax law explicitly taxes somebody on the wages that they earn. Right. So, I mean, that's an interesting question. I don't know if the — if the Federal tax system would allow a state court to relieve somebody of the tax burden of the wages that they earn. Well, certainly in footnote 7 of Gilmore, where it says, one commentator argues that when an employee who is eligible to retire chooses to continue working, part of his or her salary is actually attributable to community effort. That footnote 7 in Gilmore which led to the question. And I think you've given the best answer you can give at this point. Right. I mean, I think what would happen if this Court affirmed the fiction engaged in by the tax court here, what would happen is that if you have a deemed pension distribution like that, where the earner's spouse can in some way reduce his gross income, well, what happened is that the tax burden would shift from the payor of these Gilmore payments to the recipient of the payments in future cases, because somehow the — the earner's spouse would be relieved of the tax burden on his wages, and that burden would shift to the person who's receiving the payments. But, you know, fundamentally, there's no basis under either the tax code or California law for Mr. Duncan to have an exclusion for the portion of his wages that he paid to his former spouse. You wanted to save two minutes. You're down to 45 seconds. But if you stop now, we'll give you two minutes. I'm sorry. If I stop now, I'll give you two minutes. Okay. Thank you. Okay. Good morning. John Duncan, Pro Se. I'll be brief. I believe that the briefs that I have submitted in regard to this matter adequately demonstrate my position in regard to it, and I would submit based on that. Would it be wise to certify this question of community property to the California Supreme Court? I really — I couldn't answer that question, Your Honor. All right. Thank you, sir. I have nothing to rebut. All right. All right. There's not much to rebut, so — if you want to comment for two minutes on Mr. Go ahead. Right. You know, I think, really, it's not a question for the California Supreme Court because I think whether or not there was a distribution from a pension plan is sort of a — it's a cut-and-dry question of actually a fact. And under the tax code, you don't have a distributee of a pension plan without a distribution from the pension. So I think that's where the tax court got it wrong when it talked about the fungibility of money, because you can't have an exclusion from your gross income without identifying the sorts, without identifying the item of income that's excludable. And I think it's clear that Mr. Duncan's post-divorce wages were his separate property. They were not community property. And the payments that he made to compensate his former wife for the diminution in her community property interests were just part of the property settlement. And what Gilmour said, Gilmour didn't require that the non-earner spouse be compensated with a stream of payments. It could have been a lump sum payment for the present value of the pension, or it could be that the earner spouse keeps the entire pension and the non-earner spouse doesn't. Or it could be that you pay a percentage of your wages until you start paying out of the pension, and the pension obligation is reduced by that amount. Well, that's not quite what happened. But that's what the Court could say how, in California, how we treat this. Well, under Gilmour, what happens, of course, is that if the non-earner spouse elects to receive the immediate payments, those payments, if it's not a lump sum, they're based on the amount of the pension that she would have received had the earner spouse retired on the date of divorce, and then she's capped. So when the pension starts paying, it pays also in that same amount. But, I mean, I think it illustrates the difference. Kennedy. All right. That's the end of the two minutes. Thank you. Thank you very much. The case just argued is submitted.
judges: D.W. Nelson, Reinhardt, Rymer